IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KARIO D. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:23-cv-742 (LMB/JFA) |
| ) | |
| CHRISTINE WORMUTH, Secretary of the U.S. ) | |
| Army, ) | |
| ) | |
| Defendant. | |

MEMORANDUM OPINION

Before the Court is defendant Christine Wormuth, Secretary of the United States Army's ("defendant" or "Wormuth") Motion to Dismiss plaintiff Kario D Harris's ("plaintiff" or "Harris") Third Amended Complaint ("Complaint") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [Dkt. No. 63]. Plaintiff has filed an opposition [Dkt. No. 66] to which defendant has replied [Dkt. No. 67]. Defendant's Motion to Dismiss is therefore ripe for consideration and, for the reasons that follow, will be granted.[1]

I. BACKGROUND

Plaintiff, acting pro se, originally filed this action in the Northern District of California, alleging that, among other things, he had been subjected to discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. After twice amending his complaint, the last version of which sought $10 million in punitive damages and $5 million in "pecuniary damages as a result of mental anguish," [Dkt. No. 25] at ¶ 32, plaintiff's request to file a third amended complaint was denied,

---

[1] Defendant waived oral argument on her Motion to Dismiss. [Dkt. No. 65].

defendant's motion to transfer the civil action to this district was granted, and the action was docketed in this district on June 8, 2023. See [Dkt. No. 47].

On August 16, 2023, defendant filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). [Dkt. No. 63]. That motion was denied as moot after counsel entered an appearance for plaintiff, requested leave to file a third amended complaint to which defendant consented, and was granted leave to file the Third Amended Complaint, which is the complaint at issue. [Dkt. No. 68]. The Complaint withdrew claims under Title VII for hostile work environment[2] and under § 1983 for failure to provide a fair and reasonable investigation into plaintiff's allegation of fraud, leaving only claims of racial discrimination and retaliation in violation of Title VII.[3] See [Dkt. No. 25]; [Dkt. No. 69].

The Complaint is replete with significant inaccuracies,[4] conflicting dates, and nonsensical language, but from what can be gathered, it alleges that while plaintiff served as a General Schedule 14 ("GS-14") civilian employee at the U.S. Army Garrison in South Korea ("USAG-Yongsan"), his "non-African-American supervisors and employees" discriminated against plaintiff for being an "African-American male" and retaliated against him because he filed

---

[2] Although plaintiff argues in his Opposition that he has satisfactorily pleaded claims of race discrimination, retaliation, and hostile work environment, Count I, the only count in the Complaint, alleges that defendant violated Title VII by engaging in race discrimination and retaliation. See [Dkt. No. 66] at 1; [Dkt. No. 69] at 7. Because plaintiff has not properly pleaded a claim for hostile work environment, the Court will only entertain plaintiff's claims for racial discrimination and retaliation as alleged in Count I of the Complaint. See [Dkt. No. 69] at 7.
[3] Instead of alleging Title VII violations based on race, plaintiff's Second Amended Complaint alleged that Wormuth engaged in adverse employment practices against plaintiff because Harris "was a [w]histleblower against the [defendant]'s desire to conceal [] prohibited practices and criminal activity." [Dkt. No. 25] ¶¶ 25, 27.
[4] The entire Prayer for Relief section of the Complaint appears to have been cut and pasted from another complaint as it refers throughout to plaintiff as "she" and cites the issue as age discrimination, not race discrimination and retaliation. See [Dkt. No. 69] at 9-10.

2

administrative grievances that "complain[]ed of the [Army]'s racial discrimination." [Dkt. No. 69] ¶¶ 1, 4, 25, 27; Id. at 7.

More specifically, the Complaint alleges that starting in June 2015, Sergeant First Class Paul Luntumbuez ("SFC Luntumbuez"), a "peer directorate chief as [sic] Director for Human Resources at USAG-Yongsan" who is described as an Asian Pacific Islander of Malaysian descent, committed "no less than eight violations of Prohibited Personnel Hiring Practices, including trying to manipulate two of [p]laintiff's hiring practices." Id. ¶ 5. Starting in April 2016, SFC Luntumbuez repeatedly made unidentified "false claims that besmirched [p]laintiff's gender and intelligence and accused [p]laintiff of harassment and stalking." Id. ¶ 6.[5]

On April 19, 2016, SFC Luntumbuez emailed plaintiff accusing him of a "prohibited personnel practice violation by manipulating the hiring process with holding [sic] a position for another employee," id. ¶ 29, and in an email sent on April 20, 2016, SFC Luntumbuez "berated" plaintiff "by referring to [plaintiff] outside of his name and sex, calling him a liar, ignorant, childish and stated, 'be a man.'" Id. ¶ 31. The following day, SFC Luntumbuez "slandered plaintiff by informing Tommy R. Mize (Deputy Garrison Commander) [("Deputy Mize")] that he was sexually harassing his employee [] and harassing (non-sexual) his other employees." Id. ¶ 32.

On April 29, 2016, SFC Luntumbuez "attempted to impose his culture" on Harris "by shaking hands on an unrelated matter and misleading [plaintiff] to believe that their handshaking resolved his EEO [c]omplaint."[6] Id. ¶ 33. SFC Luntumbuez then "retaliated against plaintiff by

---

[5] The Complaint alleges that SFC Luntumbuez engaged in this conduct between April 2016 and November 2022, but the instant action was filed in January 2022, which would have been before the culmination of SFC Luntumbuez's alleged misconduct. [Dkt. No. 69] at 1, ¶ 6.
[6] The Complaint alleges that plaintiff filed two Equal Employment Opportunity (EEO) complaints during the relevant period, including in May 2016 and June 2018, [Dkt. No. 69] at 2;

3

not updating his office position descriptions and becoming non-responsive to work-related assignments associated with his office." Id. ¶ 30.

At some point in April 2016, plaintiff reported to Deputy Mize that SFC Luntumbuez had committed $10,000 in fraud against the Army. Id. ¶ 7. Over the course of the investigation against SFC Luntumbuez, investigators "intentionally disregarded eyewitness testimony" that was "probative of [the] fraud, and thus manipulated the result of the investigation." Id. ¶ 8. Rather than exposing the alleged fraud, "Caucasian Americans" Deputy Mize and Col. Joseph Scott Peterson ("Col. Peterson"), a higher-level supervisor of both plaintiff and SFC Luntumbuez, "engaged in a clear collusion to conceal the [] fraud." Id. ¶ 9.

In May 2016 plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging that the above-mentioned experiences resulted in "hostile work environment, harassment, and discrimination based on race." Id. at ¶ 11. According to the Complaint, plaintiff's filing of the administrative grievance "only intensified the harassment, hostility, and disparate treatment based on race." Id. ¶ 34.

Without providing any details as to what occurred, the Complaint vaguely asserts that at some point, Col. Peterson "sexualized the workplace to harass [p]laintiff over [p]laintiff's race-discrimination EEO [complaint]." Id. ¶ 14. Col. Peterson then "involved" himself with a never-before mentioned person named Esther Almas, whose association to any of the named parties is unknown, which allowed SFC Luntumbuez "to continue the harassment of plaintiff." Id. The Complaint also accuses SFC Luntumbuez of "retaliation" when it nonsensically alleges that "[o]n June 27, 2016, [SFC] Luntumbuez accused plaintiff of personally attacking him upon his

---

however, the Complaint's allegation that in April 2016 SFC Luntumbuez misled plaintiff to believe that his EEO complaint had been resolved would have occurred before plaintiff ever filed either EEO complaint. Id. ¶ 33.

4

(Complainant's) refusal to protect him (Luntumbuez) and his staff's unpunctuality with meeting work-related suspenses." Id. ¶¶ 35, 37.

At some point in October 2016, Col. Peterson launched a Commander's Inquiry into plaintiff's conduct that, according to the Complaint, "falsely alleg[ed] [] [p]laintiff had sexually harassed [SFC] Luntumbuez," and as a result, plaintiff "was forced to undergo questioning about the false allegations." Id. ¶ 15. The Complaint alleges that this investigation was a "subterfuge" to "further empower [SFC] Luntumbuez in the attacks against [p]laintiff" because of plaintiff's filing the May 2016 EEO complaint. Id. ¶ 16. Apparently, the investigation concluded that there was merit to the claim about plaintiff because the Complaint states that the results of that investigation "assign[ed] blame to [p]laintiff" and as a result, "[p]laintiff was degraded mercilessly." Id. ¶ 17.

In December 2017, Col. Peterson "downgraded" plaintiff's "Permanent Change of Station" honorary award because plaintiff supervised a "small directorate," while giving undisclosed non-African Americans who supervised fewer personnel a higher honorary award.[7] Id. ¶ 18. Plaintiff instead received a "Commander's Award for Civilian Service," which, according to plaintiff, reflected "less honorary recognition than that to which [plaintiff] was ordinarily entitled and thus expecting." Id. ¶ 36.

---

[7] As another example of the Complaint's inaccuracies, it alleges that Col. Peterson "downgraded" plaintiff's honorary award in December 2017, [Dkt. No. 69] ¶ 18; however, the Complaint later alleges that this downgrading occurred on May 2, 2018. Id. ¶ 36. In viewing the Complaint in the light most favorable to the non-moving party, the Court will assume that Col. Peterson downgraded plaintiff's honorary award in December 2017. See Scotese v. Prudential Ins. Co. of Am., 322 F.Supp.2d 680, 682 (E.D. Va. 2004) (stating that "the court must accept the complaint's factual allegations as true and view all allegations in a light most favorable to the nonmoving party").

In January 2018, Col. Peterson and Deputy Mize committed "reprisal actions" against plaintiff by having plaintiff removed from his GS-14 position and returned to a GS-13 position in Texas to "thwart plaintiff's competitive advantage for an opening GS-15 position in South Korea, which fell under the supervision of [Deputy] Mize." Id. ¶ 20. Plaintiff filed a second EEO complaint in June 2018, asserting claims of retaliation based on the downgrading of the honorary award and the transfer from South Korea to Texas, which he claimed was in retaliation for his filing the first EEO complaint in May 2016.[8] Id. ¶¶ 20-22.

## II. DISCUSSION

In her Memorandum in Support of her Motion to Dismiss, defendant argues that plaintiff has at most pleaded conclusory allegations "that paint a picture of ordinary workplace disagreements rather than plausible Title VII violations." [Dkt. No. 64] at 1. Plaintiff opposes defendant's Motion by arguing that the Complaint "carefully and plainly" pleads factual claims that plausibly state a violation of Title VII above a speculative level. [Dkt. No. 66] at 2. Although plaintiff has had four opportunities to amend his complaints, and retained counsel before filing his confusing Third Amended Complaint, plaintiff still fails to allege any non-conclusory facts supporting a claim for discrimination or disparate treatment because of his race or retaliation because of his filing two EEO complaints.

### A. Standard of Review

To dismiss a claim under Rule 12(b)(6), a court must find that a "plaintiff's allegations fail to state a claim upon which relief can be granted." Abdelhamid v. Sec'y of the Navy, 525 F.

---

[8] After consolidating plaintiff's May 2016 and June 2018 EEO complaints, the administrative law judge at the Equal Employment Opportunity Commission dismissed plaintiff's complaints finding the conduct alleged to be nothing more than "ordinary workplace climate and happenings in the federal government." [Dkt. No. 69] at 2. Plaintiff appealed that decision, which was upheld on November 3, 2021. Id.

6

Supp. 3d 671, 681 (E.D. Va. 2021) (quoting Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017)).

At the motion to dismiss stage, "the court accepts facts alleged in the complaint as true and views those facts in the light most favorable to the plaintiff." Sturgill v. Norfolk Southern Ry. Co., 391 F. Supp. 3d 598, 602 (E.D. Va. 2019) (internal citation omitted). To survive a Rule 12(b)(6) motion, a complaint's factual allegations must be more than speculative and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). It also is not enough for a plaintiff to simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555.

**B. Race Discrimination**

To state a plausible claim for race discrimination, a complaint must allege facts supporting the following elements beyond a speculative level: 1) the defendant took an adverse "personnel action" against plaintiff; and 2) in doing so, defendant "discriminated" against plaintiff "based on race." 42 U.S.C. § 2000e-16(a). Defendant contends that the Complaint fails to state a claim for race discrimination because its allegations "do[] not arise to a level of cognizable 'personnel action,'" required for Title VII to apply, and even if the Complaint identified a "personnel action," there are "no well-pleaded factual allegations from which to plausibly infer that any of the conduct was because of plaintiff's race." [Dkt. No. 64] at 6. In his Opposition plaintiff primarily repeats paragraphs from the Complaint and, without providing any additional support, concludes that defendant treated plaintiff "as an African-American and as a participant in a protected activity, disparately from defendant's treatment of others who are either non-African-American or non-participants in Title VII-protected activity." [Dkt. No. 66] at 10.

In this district, a personnel action must constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Barnhill v. Garland, 636 F. Supp. 3d 592, 604 (E.D. Va. 2022) (quoting Abdelhamid, 525 F. Supp. 3d at 684). Although the Complaint alleges that plaintiff suffered racial discrimination as a result of SFC Luntumbuez's workplace treatment of Harris, along with defendant not taking plaintiff's allegations about SFC Luntumbuez's conduct seriously and conducting a fraudulent investigation into SFC Luntumbuez's conduct, at no point does the Complaint claim that Harris experienced any significant change in employment because of those actions. A plaintiff's mere distaste for decisions or actions in the workplace does not establish a personnel action under Title VII, let alone an adverse personnel action based on race. Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 431 (4th Cir. 2015) ("Dislike of or disagreement with an employer's decisions does not invariably make those decisions ones that adversely affected some aspect of employment.").

At best, the only two allegedly adverse employment actions described in the Complaint are the downgrading of plaintiff's honorary award in December 2017 and plaintiff's January 2018 transfer from South Korea to Texas and demotion to a GS-13 position. The Complaint treats the January 2018 transfer and grade reduction as retaliation against plaintiff for having filed administrative grievances against the Army, not as an instance of race discrimination. [Dkt. No. 69] at ¶ 20. The Complaint further alleges that in December 2017 Col. Peterson "audacious[ly] demerit[ed]" plaintiff's honorary award when awarding plaintiff a Commander's Award for Civilian Service as opposed to another unspecified award that plaintiff "was expecting," the Complaint has not alleged any facts showing that this award led to a significant change in employment. Id. ¶ 36; see Cottman v. Rubin, 35 F. App'x 53, 55 (4th Cir. 2002)

(finding that a failure to receive an honorary award alone "do[es] not amount to [a] redressable adverse employment action[]").

Moreover, even if Col. Peterson's "downgrading" of plaintiff's honorary award produced a significant change in plaintiff's employment status, plaintiff's claims of racial discrimination still fail because the Complaint makes only "naked assertions" of discrimination based on race "devoid of further factual enhancement." McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 588 (4th Cir. 2015). In McCleary-Evans, the Fourth Circuit found that the plaintiff's bare allegation that an employer failed to hire her because of her race or sex was too conclusory to state a plausible claim for relief. Id. at 585. The Complaint's direct allegations of race discrimination are even weaker than those in McCleary-Evans because plaintiff merely lists the races of different actors and asserts that, because these employees were not the same race as plaintiff, plaintiff's negative experiences in the workplace were a result of racial discrimination. Such conclusory allegations, without evidence that defendant engaged in adverse conduct "because of" plaintiff's race, are simply insufficient. Id.; See, e.g., Johnson v. Mechs. & Farmers Bank, 309 F. App'x 675, 681 (4th Cir. 2009) (stating that direct evidence of discrimination requires "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision).

The Complaint also fails to allege sufficient evidence of indirect instances of racial discrimination. For example, it does not claim that plaintiff did not receive the December 2017 honorary award because of his race; rather, the Complaint provides a "formulaic recitation" in one sentence that defendant did not give Harris the allegedly higher award he wanted while other "non-African American[]" employees did receive such an award. See [Dkt. No. 69] ¶ 18; Twombly, 550 U.S. 544 at 555 (explaining that pleading plausible claims "requires more than

9

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The Complaint alleges "nothing more than that" plaintiff was treated differently "in favor of someone outside [his] protected class," which cannot sustain a plausible discrimination claim. McCleary-Evans, 780 F.3d at 588. Without more, the Complaint's charge of racial discrimination or disparate treatment based on race amounts to a conclusory and insufficiently pleaded claim.

### C. Retaliation

To state a plausible claim for retaliation, a complaint must allege facts supporting the following elements beyond a speculative level: 1) plaintiff "engaged in protected activity"; 2) plaintiff suffered an "adverse employment action"; and 3) a "causal link" exists between plaintiff's "protected activity and the adverse action." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). Defendant argues that the Complaint fails to allege a causal link between plaintiff's EEO complaints and any adverse action. [Dkt. No. 64] at 11-12. Harris opposes defendant's Motion by again stating that he has pleaded sufficient facts to satisfy the Motion to Dismiss. [Dkt. No. 66] at 9.

The Complaint properly alleges that plaintiff engaged in protected activity when he filed two EEO complaints, one in May 2016 and the other in June 2018, both of which allege violations of Title VII. [Dkt. No. 69] ¶ 27, 34, 37. The Complaint describes three alleged adverse actions—Col. Peterson authorizing an internal investigation against plaintiff in October 2016, Col. Peterson not granting plaintiff the honorary award that plaintiff expected in December 2017, and Col. Peterson and Deputy Mize demoting plaintiff in January 2018 from his GS-14 position to a GS-13 position when he was transferred to Texas. Id. ¶¶ 15, 18, 20, 35.

As an initial matter, plaintiff's filing of the second EEO complaint in June 2018 could not have been the basis for any of the alleged adverse actions against plaintiff because he filed that EEO complaint five months after plaintiff's demotion, and "retaliatory conduct, by its very nature, must come after the protected activity." Hall v. Greystar Mgmt. Servs., L.P., 637 F. App'x 93, 98 (4th Cir. 2016). The only relevant protected activity, then, is plaintiff's EEO complaint filed in May 2016. [Dkt. No. 69] at ¶ 34.

Although the Complaint alleges adverse actions that occurred after plaintiff filed the May 2016 EEO complaint, neither instituting an internal investigation nor failure to bestow a desired honorary award are adverse employment actions that can serve as the basis for a retaliation claim. See Ramsey v. Dep't of Veterans Affs., 2013 WL 6154191, at *6 n.32 (D. Md. Nov. 21, 2023) ("Failure to award a discretionary . . . performance award is not a materially adverse action."); Simmington v. Gates, 2010 WL 1346462, at *13 (D. Md. Mar. 30, 2010) (explaining that "mere initiation of an investigation into a plaintiff's conduct, without tangible consequences, which is never acted upon is not materially adverse") (quoting Blaloch v. Norton, 517 F.Supp.2d 345, 358 (D.D.C. 2007), aff'd, 550 F.3d 1191 (D.C. Cir. 2008)). Even if either of these alleged instances of misconduct could serve as the proper basis for such a claim, the Complaint must allege facts showing a causal connection between the protected activity and the adverse employment action. See Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007) (explaining that plaintiff must allege facts that "show that [the defendant] fired [the plaintiff] 'because [] plaintiff engaged in a protected activity'").

Here, the Complaint does not allege any facts that show a causal link between plaintiff's filing the EEO complaint in May 2016 and the alleged retaliatory conduct. For example, the Complaint asserts that plaintiff was "degraded mercilessly" because of the internal investigation

against him, but it provides no factual support for this naked assertion; rather, it suggests that the investigation found that plaintiff engaged in improper conduct. [Dkt. No. 69] ¶ 17; see Zackrie v. Lockheed Martin, Corp., 2006 WL 2849767, at *8 (D. Md. Oct. 2, 2006) (finding that an employer's action of documenting areas for the plaintiff's improvement was not materially adverse).

More fatal to plaintiff's retaliation claim is the time between his protected activity and the alleged adverse actions because it eliminates any suggestion of causality between them. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (explaining that a lack of temporal proximity between the protected activity and retaliatory conduct suggests "no causality at all"). The first alleged retaliatory action, the October 2016 internal investigation, occurred five months after plaintiff's EEO complaint, and the last, the January 2018 transfer and demotion occurred 20 months after plaintiff filed the complaint. Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (explaining that "three to four months" is too long); Breeden, 532 U.S. at 273-74 (finding actions taken 20 months later suggests "no causality"). Although the Complaint highlights a tumultuous relationship between SFC Luntumbuez and Harris, it fails to state any plausible claim for race discrimination and retaliation by the defendant upon which relief can be granted.

### III. CONCLUSION

For the reasons stated above, the Court concludes that defendant is entitled to judgment in her favor with respect to her Motion to Dismiss. Although the Court appreciates that plaintiff filed three of his four complaints while proceeding pro se, plaintiff retained counsel to file his

Third Amended Complaint, which fares no better than plaintiff's past pleadings.[9] Adkins v. Ross, 2015 WL 7012544, at *6 (E.D. Va. Nov. 12, 2015) (denying a pro se plaintiff's request to file her complaint a third time). Because plaintiff has been given four opportunities to amend his complaint and because further amendment would not resolve crucial deficiencies within the Third Amended Complaint, no further amendment will be permitted, and defendant's Motion to Dismiss will be granted with prejudice by an Order to be issued with this Memorandum Opinion.

Entered this 20th day of September, 2023.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[9] Plaintiff's counsel had the benefit of seeing defendant's Motion to Dismiss the Second Amended Complaint and was, therefore, on notice as to many of the pleading defects he did not cure in the Third Amended Complaint. See [Dkt. No. 59].